UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERESA SMITH-BARRETT,

                            Plaintiff,

                                                DECISION AND ORDER

                                                05-CV-6354L

          v.

JOHN E. POTTER, Postmaster General of
the United States Postal Service,

                            Defendant.
_____

Plaintiff Teresa Smith-Barrett ("plaintiff") brings this action alleging discrimination in employment on the basis of gender against her former employer, the United States Postal Service ("USPS"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] USPS now moves for summary judgment dismissing plaintiff's complaint in its entirety (Dkt. #17). For the reasons that follow, that motion is granted and the complaint is dismissed.

Plaintiff was hired by the USPS in March 1996 as a Sales and Service Associate at the branch located in Caledonia, New York, and remained in that position throughout the relevant time period. For purposes of the collective bargaining agreement between the USPS and plaintiff's union,

---

[1] Initially, plaintiff also asserted discrimination claims under the New York Human Rights Law. Plaintiff has since withdrawn those claims.

plaintiff was classified as a "part-time flexible" employee, meaning that she worked less than forty hours per week and was required to be available to work flexible hours, as assigned and as needed.

On August 14, 2003 and September 16, 2004, plaintiff filed administrative complaints with the Equal Employment Opportunity Commission ("EEOC"), charging USPS with discriminating against her on the basis of gender and race, by denying her promotions to certain positions. Upon receipt of a Right to Sue letter, plaintiff timely filed the instant action on July 7, 2005, alleging unlawful denial of promotions to the Postmaster and Officer in Charge ("OIC") positions, due to her female gender and/or American Indian race, and in retaliation for having filed the two EEOC charges.

Plaintiff alleges that two USPS managers, Operations Manager Deborah Essler ("Essler") and Essler's successor, Lou Speciale ("Speciale") wrongfully denied her promotions to five positions for which she was qualified: (1) Postmaster of the Alton, NY post office; (2) OIC of the Rush, NY post office; (3) OIC at the Caledonia, NY post office; (4) OIC at the Pavilion, NY post office; and (5) OIC of the Geneseo, NY post office.[2] Each of these positions was ultimately awarded to a male or to a Caucasian female.

Plaintiff has since been promoted to the position of Postmaster of the Groveland, NY post office.

---

[2] Plaintiff has withdrawn a sixth claim of discrimination, relating to denial of a promotion to OIC at the West Bloomfield, NY post office.

**DISCUSSION**

I.  **Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a common component of discrimination actions, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) (summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

Plaintiff's claims of employment discrimination pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002). Once plaintiff has established a

*prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to plaintiff, to supply evidence that the legitimate, nondiscriminatory reason offered by the defendant is a pretext. *See St. Mary's Honor Center*, 509 U.S. 502 at 508.

While granting plaintiff the liberal interpretation and favorable inferences due to her as a nonmovant, I find that plaintiff has nonetheless failed to establish a *prima facie* case of discrimination, and/or to rebut the USPS's legitimate, nondiscriminatory reasons for not appointing her to the positions for which she applied.

    **A.**    **Plaintiff's Title VII Discrimination Claims Based on Race and Gender**

Plaintiff alleges that USPS discriminated against her on the basis of her American Indian race and female gender.

In its opening salvo, USPS contends that American Indian status does not constitute membership in a protected class for Title VII purposes, because of language in a Federal Circuit Court case regarding the determination of Native American status as it relates to entitlement to hiring preferences under the Indian Reorganization Act, stating with respect to that statute, "Indian status is political and not racial." *Mullenberg v. U.S.*, 857 F.2d 770, 772 (Fed. Cir. 1988). Plaintiff responds that Native Americans are indeed a protected class under Title VII, relying upon dicta in a concurring opinion in a Supreme Court case.

As an initial matter, the Court is troubled by the parties' apparent confusion as to whether American Indians comprise a protected class for purposes of Title VII, and their evident inability to

locate authoritative case law on the subject. While USPS correctly notes that courts addressing the issue have variously done so under the auspices of discrimination due to race, ethnicity, and national origin (curiously relying solely upon case law issued from *outside* this Circuit), the fact that American Indian status has been protected on multiple grounds does not erode the viability of plaintiff's claims.[3] Indeed, other district courts in this Circuit have repeatedly found that American Indians and their descendants are protected from discrimination by Title VII. *See e.g.*, *Smith v. Long Island Univ.*, 2007 U.S. Dist. LEXIS 38379 (E.D.N.Y. 2007); *Steffy v. Ford Motor Co., Inc.*, 2007 U.S. Dist. LEXIS 20524 (W.D.N.Y. 2007); *Martinez v. Amalgamated Transit Union*, 2005 U.S. Dist. LEXIS 12252 (E.D.N.Y. 2005).

The USPS also argues that even if American Indians are protected by Title VII as a racial minority, plaintiff's claim to that status is tenuous because she is not a member of any tribe, and her only proof of tribal association is a document verifying that she is a descendant of the Minnesota Chippewa Tribe, White Earth Reservation, Mississippi Band, with a bloodline percentage of 7/32

---

[3] It may be that the USPS is attempting to argue that American Indian status is simply not racial, and therefore suggesting that plaintiff is barred from pursuing her claims here because she is limited to the racial grounds alleged in her EEOC charges. However, "because racial categories may overlap significantly with nationality or ethnicity, 'the line between discrimination on account of race and discrimination on account of [other prohibited bases] may be so thin as to be indiscernible,' or at least sufficiently blurred so that courts may infer that both types of discrimination would fall within the reasonable scope of [an] EEOC investigation for exhaustion purposes." *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003), *quoting Adames v. Mitsubishi Bank, Ltd.*, 751 F. Supp. 1548, 1559 (E.D.N.Y. 1990) (internal citations omitted). "'[P]rejudice is as irrational as is the selection of groups against whom it is directed' – thus we cannot simply assume that employment discrimination invariably fits into neat, clearly distinct legal categories." *Deravin*, 335 F.3d at 202 n.5, *quoting Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971 (10th Cir. 1979). Accordingly, plaintiff's characterization of her status as racial in her administrative charges would not bar her from pursuing claims on those grounds, even if it were well-settled that Native American status is more closely associated with ethnicity or national origin.

(21 percent). However, the Court notes that while official tribal membership may provide strong evidence of one's claim to American Indian heritage, the absence of tribal membership does not, as the USPS's argument would seem to suggest, signify non-membership in the larger protected class.

Despite the dearth of case law concerning the extent of blood relationship necessary to establish one's membership in a protected class for *prima facie* discrimination case purposes, I find that imposing an arbitrary threshold for tribal membership would serve no purpose here. Even assuming *arguendo* that plaintiff has set forth a *prima facie* case of discrimination with respect to her race-based claims, plaintiff has failed to rebut the USPS's legitimate, nondiscriminatory reasons for selecting Caucasian candidates for each of the five Postmaster and OIC positions at issue.

The USPS does not dispute that plaintiff was qualified for each of the Postmaster and OIC positions she sought, but in each case has proffered a legitimate, nondiscriminatory reason for selection of a candidate other than plaintiff.

### 1. Alton Postmaster

Plaintiff was one or two or three candidates deemed equally qualified by a review panel for the Alton Postmaster position. The candidate Essler ultimately chose to hire was Glenn Wyand, a Caucasian male. Essler testified that Wyand was chosen over plaintiff because he had worked at a larger post office, had more experience than plaintiff because he had been working full-time rather than part-time, and had experience handling customer complaints. Essler was also put off by plaintiff's statements during her interview that she "knew everything there was to know" about being a high-level Postmaster and considered the lower-level Alton Postmaster position "beneath her," but that it was something she would accept as a stepping stone to a higher-level Postmaster position in

the larger Henrietta post office, which was her ultimate goal. Essler concluded as a result of these statements that plaintiff overvalued her own knowledge and experience, and had unrealistic expectations concerning the speed with which one could achieve upward mobility to a high-level management position.

Plaintiff does not dispute that Wyand was qualified for the position, but argues that as the employee of a smaller post office, she had a wider range of experience than Wyand because she was called upon to perform more duties than employees at larger locations, and therefore should have been awarded the position.

### 2. Rush OIC

An OIC position is created wherever a facility has a vacancy due to the Postmaster's temporary absence, and requires the selected individual to work as the acting Postmaster for that facility until the regular Postmaster returns. Essler testified that she usually, but not always, chose individuals for OIC positions from a list of pre-qualified persons seeking assignment to those positions. It is undisputed that at all relevant times, plaintiff was on the OIC list.

Essler chose Audrey Vandercamp, a Caucasian woman who had not been on the OIC list, for the Rush OIC position. Essler testified that although she usually tried to assign OICs from outside a given office in order to allow employees a greater breadth of experience, she selected Vandercamp, in part, because of Vandercamp's familiarity with the Rush office from previous work there. Essler testified that she considered plaintiff to be unavailable at the time of the Rush OIC assignment, due to the fact that one of plaintiff's coworkers at the Caledonia facility was seriously ill and prone to

seizures and therefore could not be left to work alone, which necessitated plaintiff's presence at the office because she was the only other available clerk.

Plaintiff alleges that she should have been chosen over Vandercamp, because Vandercamp was not on the OIC list and had already worked at the Rush office.

### 3.     Caledonia OIC

To fill the Caledonia OIC position, Essler selected Steve Reiswick, a Caucasian male. Essler testified that the position was not given to plaintiff because Reiswick had superior skills to plaintiff, plaintiff was needed to perform her usual duties at the office due to her fellow clerk's continued ill health, and because there was already "unrest among the carriers" at the Caledonia facility, a problem which Essler attributed to plaintiff's purported alliance with a former supervisor. Plaintiff argues that she was not responsible for any "unrest," and that she should have been chosen over Reiswick because he was not on the OIC list at the time he was offered the Caledonia OIC position.

### 4.     Pavilion and Geneseo OIC

Upon Essler's relocation to another position, Speciale became the Operations Manager. Plaintiff informed Speciale of her interest in two available OIC assignments in Pavilion and Geneseo. However, Speciale refused to remove plaintiff from the Caledonia office, citing, as Essler had, the illness of plaintiff's fellow clerk and the need for plaintiff to be present at the Caledonia facility because her colleague could not be safely left alone. Plaintiff does not address the person chosen for the Geneseo position, but alleges that the Pavilion position was filled by a Caucasian male who was not on the OIC list, over whom she therefore should have been given preference.

Upon review of all of the submitted evidence, I find that plaintiff has failed to rebut the USPS's legitimate, nondiscriminatory reasons for selecting other candidates for each of the five Postmaster and OIC positions at issue.[4] While the candidates chosen over plaintiff were not on the OIC list of pre-qualified candidates, it is undisputed that Essler and Speciale were free to select candidates who had not been placed on the list, and plaintiff does not dispute that each of the chosen candidates was qualified to serve as an OIC. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981) ("[an] employer has discretion to choose among equally qualified candidates, provided that the decision is not based on unlawful criteria"); *DeLuca v. Allied Domecq Quick Service Restaurants*, 2006 U.S. Dist. LEXIS 39261 at *27 (E.D.N.Y. 2006) (an employer may undertake an adverse employment action "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"). To the extent that plaintiff opines that she was better suited for some of the positions than the other candidates, or that Essler and Speciale should have ignored the staffing needs of the Caledonia office in order to accommodate her desire for an OIC or Postmaster position, plaintiff offers no evidence that either manager ignored or misapplied any *bona fide* selection criteria, or that their decisions

---

[4] The lack of evidence of pretext is particularly evident with respect to plaintiff's gender-based discrimination claims against Essler. While not dispositive, the fact that Essler is a woman suggests that gender bias was not the reason for Essler's promotion decisions. *See Mathews v. Huntington*, 499 F. Supp.2d 258, 267 (E.D.N.Y. 2007)(fact that decision makers were in same protected class as plaintiff undermines the inference of discriminatory animus); *Zuffante v. Elderplan, Inc.*, 2004 U.S. Dist. LEXIS 5425 (S.D.N.Y. 2004) (same). Moreover, in one of the promotions at issue in this case and several of those complained about by plaintiff in her EEOC charges, Essler did not choose a male candidate over plaintiff: she simply chose a different female candidate. *See e.g., Paddock v. Brockport*, 418 F. Supp.2d 288, 295 (W.D.N.Y. 2006) (fact that plaintiff was replaced by another woman "weighs heavily" against an inference that her employment was terminated on the basis of her female gender).

were otherwise motivated by discriminatory animus. *See generally Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 320 (W.D.N.Y. 1999) ("[w]hether plaintiff considers himself to have been the better candidate, then – indeed, even whether he *was* the better candidate – is not the issue. What matters is why the employer did what it did, not whether it was wise to do so. 'Title VII prohibits discrimination, not poor judgment.' Employers should be free to choose the person that they honestly (even if erroneously) consider the better-qualified candidate without being subjected to liability merely because the two candidates are of a different race"), *quoting Gumbs v. Hall*, 51 F. Supp. 2d 275, 282 (W.D.N.Y. 1999). *See also Montana v. First Fed. Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (federal courts do not have a "roving commission to review business judgments"); *Meiri*, 759 F.2d 989 at 995 (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process").

Plaintiff has thus failed to produce evidence demonstrating that USPS's reasons for selecting other candidates for various promotions were pretextual, and plaintiff's gender and race-based discrimination claims must be dismissed.

**B.     Plaintiff's Claims of Retaliation Based on EEOC Charges**

Retaliation claims are also analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. at 792. On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Gallagher v. Delaney*, 139 F.3d 338 (2d Cir. 1998). Once the plaintiff has done so, the burden shifts to the

defendant to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendant does so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000).

Plaintiff claims that a few weeks after the filing of her EEOC charges, USPS reduced her hours, changed her schedule, and otherwise began treating her unfairly. The USPS argues that the changes occurred in response to shifting staffing needs in the Caledonia office and the slower summer season, and that the other Caledonia clerk, a Caucasian male, had his hours reduced in the same fashion. The USPS also emphasizes that in any event, plaintiff's status as a part-time flexible employee did not entitle her to any more hours than she was assigned, or to work a particular schedule. Plaintiff does not dispute these assertions, or offer any evidence to connect the reduction in hours with her EEOC charges, except for the temporal proximity between the two, which is insufficient to sustain a retaliation claim. *See Simpson v. New York State Dep't of Civil Servs.*, 166 Fed. Appx. 500, 502 (2d Cir. 2006). As such, her retaliation claim based on her schedule assignments must be dismissed.

Plaintiff also claims that she was "shorted" monies on one or more paychecks, during a period of several weeks when she left work due to "stress." However, it is undisputed that plaintiff failed to provide any medical documentation to support her claim of incapacity, despite requests from USPS that she do so in order to receive a paycheck. Because there is no evidence that plaintiff was entitled to payment for her unauthorized absence, her claim of retaliation on the grounds of nonpayment for the weeks she was absent from work must be dismissed.

Finally, plaintiff alleges that following the filing of her EEOC charges, she was the victim of unspecified "disparaging remarks" and was "generally harassed" and treated unfavorably by unnamed supervisors who audited her cash drawer on one occasion, and denied certain requests for leave and "loaner hours." Plaintiff does not otherwise specify the alleged harassing conduct, and testified only that she overheard or was the subject of remarks by one or more coworkers suggesting that they would make plaintiff "do all the work," and that a coworker told her he had made a comment to others concerning a letter plaintiff wrote to management and believed was confidential.

I am not convinced that the remarks and conduct of which plaintiff complains reach the level of unlawful harassment. In any event, plaintiff's bare allegations that she was mistreated, and her speculative assertions that it must have been precipitated by her EEOC charges, are insufficient to survive summary judgment. *See generally D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (plaintiff responding to motion for summary judgment "may not rely on mere conclusory allegations or unsubstantiated speculation, but instead must offer some hard evidence that its version of the events is not wholly fanciful"). As such, her claim of retaliatory harassment must be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #17) is granted and plaintiff's complaint is dismissed in its entirety, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 31, 2008.